**NO. CIV-07-1374-C**

---

**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA**

---

**CURTIS EDWARD McCARTY,**

**Plaintiff,**

**v.**

**JOYCE GILCHRIST,** *et al.,*

**Defendants.**

---

**MOTION TO DISMISS OF DEFENDANT CITY
OF OKLAHOMA CITY AND BRIEF IN SUPPORT**

---

**KENNETH JORDAN**
**Municipal Counselor**

By:   **Richard C. Smith, OBA #8397**
      **Amanda B. Carpenter, OBA #20965**
      **Assistant Municipal Counselors**
      **200 N. Walker, Suite 400**
      **Oklahoma City, OK 73102**
      **(405) 297-2451   FAX (405) 297-3851**
      **Attorneys for City of Oklahoma City**
      **rick.smith@okc.gov**
      **amanda.carpenter@okc.gov**

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ ii

Statement of Plaintiff's Case .......................................................................................... 2

Arguments and Authorities ............................................................................................. 5

    Proposition No. I.  Plaintiff's Action Is time Barred .................................................. 5

    Proposition No. II.  Pending charges and a Claim of
    Malicious Prosecution ................................................................................................ 10

    Proposition No. III.  Defendants Citty and Gilchrist Are Entitled to
    Dismissal in Their Official Capacity .......................................................................... 15

Conclusion ...................................................................................................................... 18

Certificate of Service ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*,
373 U.S. 83 (1963) ........................................................................................................ 11

*Brandon v. Holt*,
469 U.S. 464 (1985) ...................................................................................................... 17

*Brown v. Hartshorne Public School District No. 1,*
926 F.2d 959 (10th Cir. 1991) ........................................................................................ 6

*Clappier v. Flynn*,
605 F.2d 519 (10th Cir. 1979) ...................................................................................... 18

*Graham v. Connor*,
490 U.S. 386 (1989) ...................................................................................................... 10

*Hardin v. Straub*,
490 U.S. 536 (1989) ........................................................................................................ 7

*Heck v. Humphrey*,
512 U.S. 477 (1994) .................................................................................................... 8, 9

*Hinton v. City of Elwood*,
997 F.2d 774 (10th Cir. 1993) ...................................................................................... 17

*Jones v. R.R. Donnelley & Sons, Co.*,
541 U.S. 369 (2004) ........................................................................................................ 6

*Kentucky v. Graham*,
473 U.S. 159, 105 S.Ct. 3099 (1985) ........................................................................... 18

*McCarty v. State*,
1995 OK CR 48, 904 P.2d 110 ........................................................................................ 4

*McCarty v. State*,
1998 OK CR 61, 977 P.2d 1116 .................................................................................. 2, 3

*McCarty v. State*,
2005 OK CR 10, 114 P.3d 1089 ......................................................................... 5, 11, 13

*McMillian v. Monroe County, Alabama*,
    520 U.S. 781 (1997) ............................................................................ 15

*Meade v. Grubbs,*
    841 F.2d 1512 (10th Cir. 1988) ........................................................... 6

*Miskovsky v. Gray*,
    2004 WL 1909462 (10th Cir. Aug. 27, 2004) ..................................... 7

*Monell v. Dept. of Social Services of the City of New York*,
    436 U.S. 658 (1978) ............................................................................ 17

*Oklahoma City  v. Tuttle,*
    471 U.S. 808 (1985) ............................................................................ 6

*Owens v. Okure,*
    488 U.S. 235 (1989) ............................................................................ 5

*Pembaur v. Cincinnati,*
    475 U.S. 469 (1986) ............................................................................ 16

*Pierce v. Gilchrist,*
    359 F.3d 1279 (10th Cir. 2004) ............................................... 10, 12, 13

*Pietrowski v. Town of Dibble*,
    134 F.3d 1006 (10th Cir. 1998) ........................................................... 17

*Public Utilities Comm'n v. Pollak*,
    343 U.S. 451 (1952) ............................................................................ 3

*Stewart v. Donges,*
    915 F.2d 582 (10th Cir. 1990) ............................................................. 13

*Tal v. Hogan,*
    453 F.3d 1244 (10th Cir. 2006) ........................................................ 4, 5

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ............................................................................... 6

*Wallace v. Kato,*
    ___ U.S. ___, 127 S.Ct. 1091 (2007) ......................................... 7, 8, 13

*Wilson v. Garcia,*
    471 U.S. 261 (1984) ................................................................................................ 5, 6

*Wolford v. Lasater*,
    78 F.3d 484 (10th Cir. 1996) ................................................................................ 13

**Federal Statutes**

42 U.S. §1983 ...................................................................................................... 5, 6, 7

42 U.S. §1988 ......................................................................................................... 5

**State Statutes**

12 O.S. § 95 ......................................................................................................... 2, 6

**Rules**

Federal Rules of Civil Procedure, Rule 12 ............................................................. 2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CURTIS EDWARD McCARTY, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-2007-1374-C |
| JOYCE GILCHRIST, in her official capacity; WILLIAM CITTY, CHIEF OF POLICE, CITY OF OKLAHOMA CITY, in his official capacity; and CITY OF OKLAHOMA CITY, OKLAHOMA, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MOTION TO DISMISS OF DEFENDANT CITY OF OKLAHOMA CITY AND BRIEF IN SUPPORT

COMES NOW the Defendant, the City of Oklahoma City and appearing specially

on behalf of Chief William City and Joyce Gilchrist[1], both of whom have been name in

their official capacities, and  pursuant to Rule 12(b)(1)(2) and (6) of the Federal Rules of

---

[1] Plaintiff actually names three Defendants, Joyce Gilchrist, William Citty, and the City of Oklahoma City.  However, in the style and in the body of his Complaint, Plaintiff alleges he is suing the two individual Defendants in their official capacities. (See ¶¶ 5 & 7 of Plaintiff's Complaint).  Defendant City is moving to dismiss Defendants Gilchrist and Citty in their official capacities because it is redundant to name them in such capacity in addition to naming the City as a Defendant.  Additionally, Defendant Gilchrist was not, under state law, a policymaker of Defendant City.  If the Plaintiff amends his Complaint to name either such Defendants in their individual capacity then such parties should be served according to Rule 4 of the Federal Rules of Civil Procedure.

Civil Procedure and 12 O.S. § 95(3), hereby moves this Court to dismiss Plaintiff's Complaint filed herein as is more specifically argued in the Brief in Support filed herewith.

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

COMES NOW the Defendant, the City, and for its Brief in Support of its Motion to Dismiss, alleges and states as follows:

**STATEMENT OF PLAINTIFF'S CASE**

1. Despite claiming that this case involves a claim of the deprivation of Plaintiff's right from "unreasonable search and seizures" as guaranteed to him by the Fourth and Fourteenth Amendments, Plaintiff fails to allege the date of his "seizure", *i.e.* his arrest. Instead, Plaintiff complains of Gilchrist's activities leading up to his first trial, which resulted in his first conviction, which was reversed by the Oklahoma Court of Criminal Appeals ("OCCA") in 1988. He complains of Gilchrist's testimony in his second trial, which resulted in his conviction and in the imposition of the death penalty, again despite OCCA's statement in *McCarty v. State*, 1998 OK CR 61, 977 P.2d 1116, 1135 n. 45:

> Joyce Gilchrist appeared on behalf of the State in the first stage trial. We found her testimony to be only slightly relevant and insufficient by itself to connect Appellant with the commission of the crime. *McCarty,* 904 P.2d at 116-17.

He acknowledges that the death penalty imposed as a result of his conviction from his second trial was reversed by OCCA in 1995 and apparently blames Gilchrist and/or the City for the imposition of the death penalty, yet again, in 1996 despite the fact that, at least, according to the OCCA's published opinion regarding his appeal on this third

sentence his counsel filed a motion in limine barring the use of evidence related solely to his guilt introduced in his second trial (first phase). *See*, *McCarty v. State,* 1998 OK CR 61, 977 P.2d 1116, 1120. McCarty fails to allege how the City was responsible for this jury's imposition of the death penalty in this trial if Gilchrist's testimony was not introduced. Plaintiff also alleges that he was deprived of his Fifth and Fourteenth Amendment rights to "a fair trial" and to be protected against deprivations of liberty and property without due process of law. The Fifth Amendment's due process clause applies only to actions of the federal government and not to municipalities. *See*, *Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952); *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997). At ¶ 28, Plaintiff finally alleges that his claim is for his alleged "wrongful imprisonment". Plaintiff does not appear to allege a constitutional claim of malicious prosecution.

2.     Defendant City asserts Plaintiff's claims are time barred as is shown hereinbelow.

3.     Plaintiff alleges the following dates:

A.     Plaintiff was charged with the murder of Pam Willis on May 22, 1985. (Complaint, ¶ 19 at p. 4);

B.     His first conviction occurred on or about March 26, 1986. (Complaint ¶ 11 at p. 3, and ¶ 20 at p. 4);

C.     His first conviction was vacated in November, 1988. (Complaint, ¶ 20 at p. 4);

3

D.      His second trial and conviction occurred in 1989.  (Complaint, ¶ 21
at p. 5)[2];

E.      Plaintiff's "second" death sentence was reversed[3], and he was retried
as to the penalty only and he "was wrongfully sentenced to death a
third time in 1996." (Complaint, ¶ 21 at p. 5);

F.      That the Oklahoma City Police Department conducted a Review
Board regarding Gilchrist in August 2001, and that part of the
evidence introduced against her was her actions in McCarty's
criminal case. (Complaint, ¶¶ 22 at pp. 5-6, 25  at p. 6 and 28 at pp.
7-8); [4]

G.      That Plaintiff had the evidence from the predetermination hearing by
at least 2003. (Complaint, ¶ 26 at pp.6-7) [5];

H.      That he "won a second outright reversal from the CCA [sic] in 2005.

---

[2] Please notice Plaintiff failed to specify the month of his second trial. According to
OCCA's opinion affirming Plaintiff's second conviction but reversing the death penalty
(*McCarty v. State*, 1995 OK CR 48, 904 P.2d 110, 114), this second trial occurred in
September 1989.

[3] Plaintiff fails to cite the day, month or year of this event.  The published opinion
referred to in n. 2 states that it was handed down on September 12, 1995.

[4] Paragraph 28 at pp. 7-8 of the Complaint, contains some inaccurate facts recited therein,
however, the accurate facts recited in this paragraph were established in the
predetermination hearing.

[5] Such paragraph states in part: "Armed with exculpatory DNA test results and
voluminous evidence of misconduct on the part of Defendants, McCarty filed for post-
conviction relief in 2003".  Plaintiff was actually given copies of the "voluminous
evidence" against Gilchrist in his federal *habeas corpus* case filed in this Court. *McCarty
v. Gibson,* United States District Court for the Western District of Oklahoma, CIV-00-
169-C, Protective Order dated November 19, 2001 (Document 101).  The City requests
that this Court take judicial notice of this Order pursuant to *Tal v. Hogan,* 453 F.3d 1244,
1264-65, n. 24 (10th Cir. 2006).

See *McCarty v. State*, 2005 OK CR 10, ¶ 12, 114 P.3d 1089, 1092-93 ("McCarty IV") (2005)." (Complaint, ¶ 26 at p. 6);[6]

I.     That Judge Gray of the Oklahoma County District Court dismissed the murder case against him on May 11, 2007. (Complaint, ¶12 at pp. 3-4); and

J.     This action was filed on December 5, 2007.

## ARGUMENTS AND AUTHORITIES

### Proposition No. I.  Plaintiff's Action Is Time Barred.

In *Wilson v. Garcia,* 471 U.S. 261 (1984), the United States Supreme Court first recognized that there was not a federal statute providing a time limitation for the bringing of actions under Section 1983 of Title 42 of the United States Code.  Section 1988 of Title 42 of the United States Code does allow for the borrowing of state-law statutes of limitations where these statutes are not inconsistent with the Constitution and laws of the United States.  The Court then held "§1983 claims are best characterized as personal injury actions" and, therefore, a state's personal injury statute of limitations should be applied to Section 1983 actions.  *Id.* at 280.  In *Owens v. Okure,* 488 U.S. 235 (1989), the Supreme Court held, "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."  *Id.* at 249-50.  On December 1, 1990, Congress enacted 28 U.S.C. § 1658, which authorized a federal four-year statute of

---

[6] The date of this Opinion was June 14, 2005.  Again, the City requests that the Court take judicial notice of the date that this published opinion was handed down pursuant to *Tal.*

limitations, however, this statute applies only to a "civil action arising under an Act of Congress enacted after the date of the enactment of this section. . . . ." In *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369 (2004), the Supreme Court held that this statute was applicable only to claims made possible by a post-1990 enactment of Congress.

Both *Wilson v. Garcia*, 471 U.S. 261 (1985) and *Owens v. Okure*, 488 U.S. 235 (1989) were actions brought by the respective plaintiffs under 42 U.S.C. § 1983 alleging, *inter alia*, a constitutional claim of assault and battery, *i.e.,* an unreasonable seizure by police officers. In *Wilson,* the Supreme Court affirmed the Tenth Circuit Court of Appeals determination that the applicable statute of limitations was the forum state's personal injury statute. Furthermore, in 1985, the Supreme Court decided *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) and *Tennessee v. Garner*, 471 U.S. 1 (1985), both of which involved allegations of unreasonable seizure – assault and battery made under 42 U.S.C. § 1983. Thus, cases against a municipality under 42 U.S.C. § 1983, and more specifically under the Fourth and Fourteenth Amendments, predate the enactment of 28 U.S.C. § 1658. In any event, Plaintiff's Complaint fails to allege that his claims herein were only made possible by a post December 1, 1990 Congressional enactment. This statute is not applicable to this action.

The applicable limitation period for the State of Oklahoma is set out in Section 95(3) of Title 12 of the Oklahoma Statutes. *See*, *Brown v. Hartshorne Public School District No. 1,* 926 F.2d 959, 962 n. 1 (10th Cir. 1991), and *Meade v. Grubbs,* 841 F.2d 1512, 1524 (10th Cir. 1988). Section 95 of Title 12 provides in part:

Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

• • •

Third, *Within two (2) years:* An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud – the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.

(Emphasis added).

In *Hardin v. Straub,* 490 U.S. 536 (1989), the Supreme Court held that computation of the limitations periods in § 1983 suits must be based on the applicable state statutes of limitations, coupled with the coordinating tolling statutes. *Id.* at 539, *citing Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980). The applicable Michigan statute of limitations in *Hardin* provided that a suit such as Hardin's must be brought within three years after the cause of action had accrued. However, the Michigan tolling statute provided that a person who was imprisoned at the time his claim accrued had an additional one year following the ending of his incarceration in which to bring such a suit. *Hardin* 490 U.S. at 540. The Supreme Court held that the State of Michigan must apply its tolling statute, which expressly extended the time for prisoners like Hardin to file suit. Oklahoma does not have a tolling provision for prisoners. *Miskovsky v. Gray*, No. 03-6186, 109 Fed. Appx. 245, 2004 WL 1909462 (10th Cir. Aug. 27, 2004) (unpublished).

In the United States Supreme Court's latest case regarding a statute of limitations issue under 42 U.S.C. § 1983, *Wallace v. Kato,* ___ U.S. ___, 127 S.Ct. 1091 (2007), the

Court initially held that the accrual date of such a cause of action was governed by federal law; then held that a claim for false arrest was akin to a claim of false imprisonment and the Court would treat them both the same. The Supreme Court found that such a claim would begin when the arrestee appeared before the examining magistrate and not upon his release from custody after the state had dropped the charges. The Supreme Court made clear that the arrestee was not alleging a malicious prosecution claim. This Plaintiff did not make such a clear statement however, such a claim would also be barred as to the City. See Proposition No. II hereinbelow. The Court in *Wallace v. Kato* then addressed its earlier opinion in *Heck v. Humphrey,* 512 U.S. 477 (1994) and held that this decision would also not toll a false arrest claim. The Court in *Heck* stated at 512 U.S. 486-87:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness could render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 USC § 2254.

And at 512 U.S. 487, the Court stated:

> But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. (Emphasis the Court's.) (Footnotes omitted.)

As of June 14, 2005, there was no "outstanding criminal judgment" (see Statement of Fact No. 3H) against the Plaintiff, and *Heck* would not be applicable. Regarding the arrestee's argument in *Wallace* that he could not file his action until the charge was

disposed of, the *Wallace* Court stated:

> What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck:* that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, see *Heck*, 512 U.S., at 487, n. 7, 114 S.Ct. 2364, all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck* required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs – what will the trigger be then? (Emphasis the Court's.)

> We are not disposed to embrace this bizarre extension of *Heck.*

127 S.Ct. 1098.

McCarty advises the Court in his Complaint that he was charged on May 22, 1985, and alleges that his first conviction occurred in March 1986. Some time between May 22, 1985, and March 26, 1986, he would have appeared before the examining magistrate. The first conviction was reversed in November, 1988, and his second conviction was reversed in 2005 (and the opinion he cites to at ¶ 26 was published in June 2005). If Plaintiff is actually bringing a Fourth Amendment "unreasonable seizure" claim, it was barred by at most, March 1988. If he is alleging some other constitutional tort that requires a reversal of the convictions, such action was barred in November, 1990, on his first conviction and June, 2007, on his second conviction. This action was filed more than two years later in December 2007. This action is not timely brought.

**Proposition No. II. Pending Charges and a Claim Of Malicious Prosecution.**

In *Graham v. Connor*, 490 U.S. 386, 393-94 (1989), the Court stated:

> As we have said many times, § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 US 137, 144, n 3, 61 L Ed 2d 433, 99 S Ct 2689 (1979). In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. See *id.*, at 140, 61 L Ed 2d 433, 99 S Ct 2689 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). (Footnote omitted.)

Thus, this Court may be required to pierce Plaintiff's allegations and determine if he really is alleging a malicious prosecution claim. In *Pierce v. Gilchrist,* CIV-02-509C, this Court analyzed the plaintiff's claim of wrongful imprisonment under the Fourth and Fourteenth Amendments, and the Tenth Circuit Court of Appeals affirmed this analysis at 359 F.3d 1279 (10th Cir. 2004). At 359 F.3d 1285-86, the Court stated:

> Most pertinent are the Fourth Amendment right to be free from unreasonable seizures, *Taylor*, 82 F.3d at 1560-61, and the Fourteenth Amendment right not to be deprived of liberty without due process of law, or more specifically, as the result of the fabrication of evidence by a government officer acting in an investigative capacity. *Anthony v. Baker,* 767 F.2d 657, 662-63 (10th Cir. 1985); *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir.2001). The initial seizure (footnote omitted) is governed by the Fourth Amendment, *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause. *Compare Taylor*, 82 F.3d at 1561 n. 5 (noting that "it is unclear how far the Fourth Amendment's protection against unreasonable 'seizures' can reach in the pretrial context"); *Albright,* 510 U.S. at 277-81, 114 S.Ct. 807 (Ginsburg, J., concurring) (suggesting that Fourth Amendment standards extend throughout pre-trial proceedings), *with Castellano v. Fragozo,*, 352 F.3d 939, 955 (5th Cir. 2003) (en banc) (holding that the "manufacturing of evidence and the state's use of that evidence . . . to obtain [defendant's] wrongful conviction indisputably denied him rights secured by the Due

Process Clause"); *Newsome,* 256 F.3d at 752 (holding that the Due Process Clause is the proper basis for challenging the use of manufactured evidence at trial).

Assuming that the Plaintiff will argue that he could not file this action until the charges were dismissed by the Court in May, 2007 (and/or seek leave to amend to include a malicious prosecution claim), his action would still be barred and/or his amendment would be futile. The City provided Mr. McCarty the information from the predetermination hearing concerning Joyce Gilchrist in November, 2001, and thus satisfied any argument regarding its alleged obligation under *Brady v. Maryland*, 373 U.S. 83 (1963). He alleges that he used this information, in part, in his 2003 application to vacate his conviction. The 2005 OCCA opinion refers to this information. (See 114 P.3d at n. 3, pp. 1090-91 and 1092, n. 11 at pp. 1092-93 and n. 17 at p. 1093). Regarding the case that remained against him after the Court excluded Gilchrist's testimony, OCCA stated at 114 P.3d 1095:

> Concerning proposition five, sufficiency of the evidence, Petitioner and the State vigorously disagree about whether or not the remaining evidence, i.e., the evidence left over after the compromised hair comparison and serology evidence is taken out of the equation, is sufficient to sustain petitioner's first-degree murder conviction.

> The State pieces through all the circumstantial evidence and states, "even without the serology and hair evidence offered by Joyce Gilchrist, sufficient evidence, taken in a light most favorable to the State, is available for any rational tier (sic) of fact to find Petitioner guilty of the first-degree murder of Pam Willis. Petitioner's multiple admissions come immediately to the forefront." The State argues the evidence makes clear that Petitioner "is anything but actually innocent of the crime… At best, this case involves a clearly guilty man who hopes to walk free because of the incompetence or malice, of an Oklahoma City police chemist."

Petitioner goes through the same evidence and argues, "under the standard enunciated in *Jackson v. Virginia,* even in the light most favorable to the State, insufficient evidence exists to sustain the conviction of first-degree murder."

The District Court was not asked to resolve this issue[28]. As the contradictory arguments raised concerning the weight of the evidence against Petitioner demonstrate, reasonable minds could disagree on the question of Petitioner's guilt. While the revelations relating to Ms. Gilchrist are clearly damaging to this largely circumstantial case, they are not necessarily fatal[29]. Proposition five thus fails.

[28]Judge Gray is clearly unimpressed by Petitioner's innocence claim: "After Pam Willis was murdered, McCarty was involved in other nasty criminal cases. His participation in another murder and rape are pretty horrific; McCarty is not a good guy." Judge Gray's order recognized that the new evidence would help the fact-finder "evaluate the totality of the evidence."

[29]In our opinion with respect to Petitioner's second trial, we noted several times the limited value of hair comparison evidence, finding it neither dispositive nor insignificant. *McCarty*, 1995 OK CR 48, ¶ 8, 904 P.2d at 116.

By November 19, 2001, when the City provided the evidence it had against Joyce Gilchrist, it can not be said that her actions lead the State to argue against McCarty's attempts to vacate his conviction nor that it lead the effort, *via* her actions, to continue to press the charges against him after the 2005 reversal. As the above-quoted portion of its opinion indicates, the Court of Criminal Appeals held in 2005 that without the Gilchrist evidence there was probable cause to proceed with the prosecution of McCarty, *i.e.*, they were the ultimate "examining magistrate".

This finding would negate either a Fourth Amendment claim (see *Pierce v. Gilchrist,* 359 F.3d 1279, 1296, *citing Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir.

1996)[7]) or a malicious prosecution Fourteenth Amendment claim (see *Pierce v. Gilchrist,*

359 F.3d at 1294-95)[8] against the City because Gilchrist's "false and fraudulent" report

could not be the reason the State continued to argue that McCarty's second conviction

should be affirmed or to continue to press the charges after the 2005 reversal.

Furthermore, even though Oklahoma County District Court Judge Gray dismissed

Plaintiff's criminal case based upon bad-faith destruction of hairs, McCarty was of aware

of such destruction in 2001 when he received the predetermination hearing documents,

specifically the OCPD Departmental Review Board Report at pp. 18-20, regarding the

destruction of hairs.  See also *McCarty v. State*, 114 P.3d 1089, 1092-93.  At the very

latest, the 2005 OCCA opinion reversing McCarty's second conviction would begin the

statute of limitations running as against the City for the claims regarding Gilchrist's

actions.[9]

In *Wallace,* the Court further stated at 127 S.Ct. 1099-1100:

---

[7] "That argument is inconsistent with this Court's holding in *Wolford* that it is a violation of the Fourth Amendment not only for an arrest warrant affiant to include false statements in the affidavit, but to "knowingly or recklessly omit from the affidavit information which, if included, *would have vitiated probable cause."* 78 F.3d at 489 (emphasis added) (citing *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990)); *see also Taylor*, 82 F.3d at 1562."

[8] "On remand, he will bear the heavy burden of showing that Ms. Gilchrist's falsification of inculpatory evidence or suppression of exculpatory evidence was necessary to the finding of probable cause: that without the falsified inculpatory evidence, or with the withheld exculpatory evidence, there would have been no probable cause for his continued confinement or prosecution.  *Stewart v. Donges,* 915 F.2d at 582 n. 13; *Wolford*, 78 F.3d at 489; *Taylor*, 82 F.3d at 1562."

[9] Assuming for the sake of argument that OCCA's 1988 opinion reversing McCarty's first conviction did not start the running of any statute of limitations regarding Gilchrist's actions leading up to his first conviction.

Petitioner has not brought to our attention, nor are we aware of, Illinois cases providing tolling in even remotely comparable circumstances. (Indeed, petitioner did not even argue for such tolling below, though he supported its suggestion at oral argument.)  Nor would we be inclined to adopt a federal tolling rule to this effect.  Under such a regime, it would not be known whether tolling is appropriate by reason of the *Heck* bar until it is established that the newly entered conviction would be impugned by the not-yet-filed, and thus utterly indeterminate, § 1983 claim.  (Footnote omitted.)  It would hardly be desirable to place the question of tolling *vel non* in this jurisprudential limbo, leaving it to be determined by those later events, and then pronouncing it retroactively.  Defendants need to be on notice to preserve beyond the normal limitations period evidence that will be needed for their defense; and a statute that become retroactively extended, by the action of the plaintiff in crafting a conviction-impugning cause of action, is hardly a statute of repose.  (Footnote omitted.)

Justice BREYER argues in dissent that equitable tolling should apply "so long as the issues that [a § 1983] claim would raise are being pursued in state court."  *Post,* at 1104.  We know of no support (nor does the dissent suggest any) for the far-reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent litigation.  As best we can tell, the only rationale for such a rule is the concern that "petitioner would have had to divide his attention between criminal and civil cases."  *Post*, at 1102.  But when has it been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place upon him?  If a defendant has a breach-of-contract claim against the prime contractor for his new home, is he entitled to tolling for that as well while his criminal case is pending?  Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.  Besides its never-heard-of-before quality, the dissent's proposal suffers from a more ironic flaw.  Although the dissent criticizes us for having to develop a system of stays and dismissals, it should be obvious that the omnibus tolling solution will require the same. Despite the existence of the new tolling rule, some (if not most) plaintiffs will nevertheless file suit before or during state criminal proceedings.  How does the dissent propose to handle such suits? Finally, the dissent's contention that law enforcement officers would prefer the possibility of a later § 1983 suit to be more likely reality of an immediate filing, *post* at 1104, is both implausible and contradicted by those who know best.  As no fewer than 11 States have informed us in this litigation, "States and municipalities have a strong interest in timely notice of alleged misconduct by their agents."  Brief for State of Illinois et al. as *Amici Curiae* 18.

Regarding Gilchrist's known actions that occurred in the first McCarty conviction, OCCA's June 2005 opinion stated at 114 P.3d 1093:

> Of course, to the extent that the prosecution was "on notice" of these matters, so was the defense. Indeed, following our decision in Petitioner's first trial, it can be safely said that the entire legal community was on notice that this Court was not particularly impressed with Ms. Gilchrist's hair comparison techniques and unscientific opinions in relation to Petitioner. (Notes omitted.)

As of November 19, 2001, the City produced all its information regarding Gilchrist to Mr. McCarty. The City did its part in turning over exculpatory material to the criminal defendant and as of that date the statute of limitation began to run. If not by this date, then the statue started as of the OCCA's second reversal occurring on June 14, 2005. Even if the City or Gilchrist was involved in the "pressing" or furtherance of the initial charges against McCarty, neither were involved after November 19, 2001, or June 14, 2005, at the latest. Defendant City is entitled to dismissal herein.

### Proposition No. III. Defendants Citty and Gilchrist Are Entitled to Dismissal in Their Official Capacity.

As the United States Supreme Court stated in *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785-86 (1997):

> Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue. See *Jett*, 491 US, at 737, 105 L Ed 2d 598, 109 S Ct 2702 (court must identify "those officials who have the power to make official policy *on a particular issue*" (emphasis added by the Court)); *id.*, at 738, 105 L Ed 2d 598, 109 S Ct 2702 (question is whether school district superintendent "possessed final policymaking authority *in the area of* employee transfers" (emphasis added by the Court)); *St. Louis v. Praprotnik*, 485 US 112, 123, 99 L Ed 2d 107, 108 S Ct 915 (1988) (plurality opinion) ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state

law for making policy *in that area of* the city's business" (emphasis added by the Court)).

Second, our inquiry is dependent on an analysis of state law. Cf. *Jett, supra,* at 737, 105 L Ed 2d 598, 109 S Ct 2702 ("['W]hether a particular official has "final policymaking authority" is a question of *state law'" (quoting, with original emphasis, Praprotnik, supra*, at 123, 99 L Ed 2d 107, 108 S Ct 915 (plurality opinion ))); *Pembaur v. Cincinnati*, 475 US 469, 483, 89 L Ed 2d 452, 106 S Ct 1292 (1986) (plurality opinion) (same).

As the Supreme Court stated in *Pembaur v. Cincinnati,* 475 U.S. 469, 481-83 (1986):

Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. See e.g., Oklahoma City v. Tuttle, 471 US, at 822-824, 85 L Ed 2d 791, 105 S Ct 2427 (footnote omitted). The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.

According to the Municipal Code of the City of Oklahoma City at § 43-4[10], only the City Council and in some circumstances, the Chief of Police can set policy for the police department and not a police chemist.

---

[10] This section states:

    (a) The Chief of Police shall be the chief administrative officer for the Police Department. All members of the Police Department shall serve subject to the orders of the Chief of Police.

    (a) [sic] The Chief of Police may prepare and submit to the City Council for its review and approval regulations and procedures relating to policy issues. These policies when approved shall be binding on all members of the Police Department.

    (b) The Chief of Police may make such other rules and regulations not relating to policy issues as he shall deem advisable. These rules may cover conduct of members of the Police Department, uniform and equipment to be worn or carried,

"[I]t is when the execution of a government policy or custom, whether made by its lawmakers or by those whose edicts . . . represent official policy, inflicts the injury that the government as an entity is responsible under [42 U.S.C.] § 1983." *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).   *See also, Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).   There is no longer a need to bring official capacity actions against local government officials for their actions in implementing or executing policy since such an action can be brought directly against the governmental entity. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998), *citing Kentucky v. Graham*, 473 U.S. 159, 165-66 and n. 14 (1985). In such cases it is only the liability of the municipality itself that is a issue and such a distinction must be drawn.  *Brandon v. Holt*, 469 U.S. 464 (1985).  An action brought against an official for his action in implementing policy is an action against the entity itself who stands liable.  The parties are one and the same. *Brandon v. Holt, supra*, 469 U.S. at 471, citing *Monell, supra*, at 436 U.S. 658, 690.

The present action was brought against the City of Oklahoma City and against OCPD Chief of Police William J. Citty and perhaps the Oklahoma City Police Department police chiefs at the time of Gilchrist's actions and Gilchrist herself, in their official capacities.  The actions of these individual Defendants in implementing the policy(if they can) is equated to the action of the entity itself; as such, these parties are one and the same. *Brandon v. Holt*, 469 U.S.464, n. 21.

A judgment which allows recovery against the entity for its policy and against an

---

identification badges, hours of service, vacation and all other similar matters necessary for better efficiency of the Police Department and, when promulgated by the Chief of Police, shall be binding on all members of the Police Department.

official for implementation of that policy allows multiple recovery for the same single violation. *See Clappier v. Flynn*, 605 F.2d 519 (10th Cir. 1979). In a case such as this, the officials acting within their authority in implementing policy should not be a party to the action when the entity itself is a party. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, n. 14 (1985). Defendants Citty and Gilchrist are entitled to be dismissed.

## CONCLUSION

For reasons stated herein, Plaintiff's Complaint is time barred and suing the City and Defendants Citty and Gilchrist in their official capacities is redundant. Plaintiff's action should be dismissed.

Respectfully submitted,

KENNETH JORDAN
Municipal Counselor


By:   /s/ Richard C. Smith
           Richard C. Smith, OBA #8397
           Amanda B. Carpenter, OBA #20965
           Assistant Municipal Counselors
           Attorneys for Defendants City of Oklahoma
           City, Chief Citty, and Joyce Gilchrist in their
           official capacities only
           200 North Walker, Suite 400
           Oklahoma City, Oklahoma  73102
           (405) 297-2451  (405) 297-3851
           rick.smith@okc.gov
           Amanda.carpenter@okc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2008, I electronically transmitted the attached Motion to Dismiss of Defendant City of Oklahoma City and Brief in Support to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:  R. Thomas Seymour and Scott A. Graham, Seymour & Graham LLP, 100 W. 5th Street, Suite 550, Tulsa, OK 74103, Perry Hudson, 435 N. Walker, Suite 102, Oklahoma City, OK 73102, Marna Franklin, 435 N. Walker, Suite 105, Oklahoma City, OK 73102, David Autry, 1021 N.W. 16th Street, Oklahoma City, OK 73106, and sent by U.S. mail to Colin Starger, 245 Sullivan Street, Room C24, New York, NY 10012, Attorneys for Plaintiff.


/s/ Richard C. Smith
Assistant Municipal Counselor